IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MILTON L. VELEZ, | ) | CASE NO. 1:15 CV 2659 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Milton L. Velez under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 13. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 10.

[4] The transcript was filed manually on February 29, 2016.

[5] ECF # 5.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

## Facts

### A.  Background facts and decision of the Administrative Law Judge ("ALJ")

Velez who was 56 years old at the time of the administrative hearing,[11] has a tenth grade education.  He never obtained a general equivalency diploma and is not married, but has three adult children.[12]  Velez resides in a group home run by Recovery Resources.[13]  His past relevant employment history includes work as a material handler and grass cutter.[14]

The ALJ, whose decision became the final decision of the Commissioner, found that Velez had the following severe impairments: other and unspecified arthropathies (back strain,

---

[6] ECF # 11.

[7] ECF # 19 (Commissioner's brief); ECF # 14 at 13 (Velez's brief).

[8] ECF # 19-1 (Commissioner's charts); ECF # 14-1 (Velez's charts).

[9] ECF # 14 at 1-2 (Velez's fact sheet).

[10] ECF # 21.

[11] Transcript ("Tr.") at 472.

[12] *Id*.

[13] *Id*. at 473.

[14] *Id*. at 19.

history of left thumb fracture), affective disorders, and a history of substance addiction

disorder (20 CFR 404.1520(c)).[15]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ

made the following finding regarding Velez's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that,
> through the date last insured,  the claimant has the residual functional capacity
> to perform light work as defined in 20 CFR 404.1567(b) except for the
> following.  The claimant could frequently climb ramps and stairs. The claimant
> could occasionally climb ladders, ropes, and scaffolds.  The claimant could
> frequently balance, kneel, stoop, crouch, or crawl.   The claimant could
> frequently finger with the left hand.  The claimant could perform tasks in a
> setting with an ordinary and routine changes.  The claimant could perform
> goal-oriented work, but could not work at production pace.  The claimant
> could occasionally interact with supervisors and coworkers if that interaction
> was limited to speaking and signaling.  The claimant could not interact with
> the public.[16]

Relying on that residual functional capacity, the ALJ found Velez capable of his past

relevant work as material handler[17] and, therefore, not under a disability.[18]

Based on an answer to a hypothetical question posed to the vocational expert at the

hearing  setting  forth  the  residual  functional  capacity  finding  quoted  above,  the  ALJ

---

[15] *Id*. at 12.

[16] *Id.* at 14-15.

[17] *Id*. at 19.

[18] *Id.* at 21.

determined that a significant number of jobs existed locally and nationally that Velez could perform.[19] The ALJ, therefore, found Velez not under a disability.[20]

**B.     Issues on judicial review**

Velez asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Velez presents the following issues for judicial review:

- Whether the ALJ's Step 3 finding is contrary to law because it failed to mention or analyze whether plaintiff's borderline intellectual functioning meets or equals listing 12.05.[21]

- Whether the ALJ failed to apply SSR 83-20.[22]

- Whether the ALJ's Step 5 finding is contrary to law and/or not based upon substantial evidence.[23]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

---

[19] *Id*. at 20-21.

[20] *Id*. at 21.

[21] ECF # 14 at 3.

[22] *Id*. at 4.

[23] *Id*. at 5.

-4-

# Analysis

**A.     Standards of review**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable

to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security
> administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is
> limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact,
> if supported by substantial evidence, shall be conclusive...." In other words, on
> review of the Commissioner's decision that claimant is not totally disabled
> within the meaning of the Social Security Act, the only issue reviewable by
> this court is whether the decision is supported by substantial evidence.
> Substantial evidence is " 'more than a mere scintilla. It means such relevant
> evidence as a reasonable mind might accept as adequate to support a
> conclusion.' "

> The findings of the Commissioner are not subject to reversal merely
> because there exists in the record substantial evidence to support a different
> conclusion. This is so because there is a "zone of choice" within which the
> Commissioner can act, without the fear of court interference.[24]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds

could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[24] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[25] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[26]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2. *Listing 12.05*

As the Sixth Circuit recently noted, because "satisfying the listing at the third step yields an automatic determination of disability based on medical findings, rather than judgment based on all relevant factors for an individual claimant, the evidentiary standards for a presumptive disability under the listings are more strenuous than for claims that proceed through the entire five step evaluation."[27]

With that in mind, Judge Gwin recently summarized the applicable standard for determining disability under Listing § 12.05C as follows:

> To be rendered disabled under Listing 12.05C, an individual must (1) have a valid IQ score between 60 and 70; (2) suffer from another impairment causing a significant work-related limitation of function; and (3) fit the "diagnostic description"[FN53] – that is, he must exhibit "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested ... before age 22."[FN54] With respect to the requirements of the diagnostic description, a claimant must satisfy three factors: "(1) subaverage intellectual functioning; (2) onset before age

---

[25] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06 CV 403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[26] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[27] *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014) (citation omitted).

-6-

twenty-two; (3) and adaptive skills limitations."[FN55] "Adaptive skills limitations" refers to "a claimant's effectiveness in areas such as social skills, communications skills, and daily-living skills."[FN56]

FN53. *West v. Comm'r of Soc. Sec.,* 240 F. App'x 692, 697–98 (6th Cir. 2007). *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.05; *Foster v. Halter,* 279 F.3d 348, 354-55.

FN54. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.05. *See West,* 240 F. App'x at 697–98; *Foster,* 279 F.3d at 354-55.

FN55. *Hayes v. Comm'r of Soc. Sec.,* 357 F. App'x 672, 674–75 (6th Cir. 2009).

FN56. *Id.* at 677 (citing *Heller v. Doe,* 509 U.S. 312, 329, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 28–29 (3d rev.ed.1987)).[28]

Moreover, Judge O'Malley developed the analytical standard as to the first prong –

the diagnostic description – in greater depth:

> With respect to the requirements of the introductory paragraph, "a claimant must demonstrate three factors to satisfy the diagnostic description: (1) subaverage intellectual functioning; (2) onset before age twenty-two; (3) and adaptive skills limitations."[FN9] *Hayes,* 2009 WL 4906909 at *2. The requirements of the introductory paragraph track the definition of mental retardation in the *Diagnostic and Statistical Manual of Mental Disorders,* Fourth Edition ("DSM–IV"), and the Sixth Circuit references the DSM–IV when evaluating disability claims. *Burrell v. Comm'r of Soc. Sec.,* No. 99–4070, 2000 U.S.App. LEXIS 33161, at *4 (6th Cir. Dec. 8, 2000) (citing Brown, 948 F.2d at 270).

FN9. "Adaptive skills limitations" refers to "a claimant's effectiveness in areas such as social skills, communications skills, and daily-living skills." *Hayes,* 2009 WL 4906909 at *5 (citing *Heller v. Doe,* 509 U.S. 312, 329, 113 S.Ct.

---

[28] *Holt v. Comm'r of Soc. Sec.*, No. 1:12 CV 2369, 2013 WL 4748029, at *3 (N.D. Ohio Sept. 4, 2013).

2637, 125 L.Ed.2d 257 (1993) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders,* 28–29 (3d rev. ed.1987)).

If the claimant satisfies the diagnostic description of the introductory paragraph, then he must establish both components of sub-section ©: he must have (1) a valid IQ score below 71; and (2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *See West v. Comm'r of Soc. Sec.,* 240 F. App'x 692, 697–98 (6th Cir. July 5, 2007) (unpublished).

As the regulation indicates, the two components of sub-section C address the *severity* of the impairment: the Social Security Act recognizes that many individuals with mild mental retardation are still able to work and, accordingly, a claimant who satisfies the diagnostic description must still produce a valid IQ score below 71 *and* demonstrate "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05©; *see also Muntzert v. Astrue,* 502 F.Supp.2d 1148, 1157–58 (D.Kan.2007) ("DSM–IV and Listing 12.05© assume many, if not most, mildly mentally retarded individuals will be able to work. However, they recognize that some mildly mentally retarded individuals may be unable to work where they have 'a physical or other mental impairment imposing an additional and significant work-related limitation of function.' 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05(C).").[29]

Of particular importance here, *Thomas v. Commissioner of Social Security* also emphasizes that there is "ample Sixth Circuit precedent for the proposition that ... a clinical psychologist's diagnosis of the claimant as outside the definition of 'mental retardation' is an important factor for the ALJ to consider in determining whether the claimant satisfies the introductory paragraph of Listing 12.05C."[30] *Thomas* explained further:

[S]ignificant reliance [by the ALJ] on a diagnosis of something other than 'mental retardation' such as 'borderline intellectual functioning,' is particularly

---

[29] *Thomas v. Comm'r of Soc. Sec.,* No. 08 CV 1365, 2010 WL 1254788, at *8 (N.D. Ohio March 25, 2010).

[30] *Id.,* at *11 (citations omitted).

sensible in light of the fact that the diagnostic description of mental retardation in the introductory paragraph of Listing 12.05 tracks the DSM-IV. Indeed, the DSM-IV is 'one of the leading texts in medicine and, as noted above, it is used extensively by Sixth Circuit courts to evaluate disability claims.[31]

Thus, *Thomas* concluded, while a diagnosis of mental retardation is not a requirement imposed by the introductory paragraph of Listing 12.05C, an ALJ is entitled to give "substantial weight" to the diagnosis of borderline intellectual functioning, not mental retardation, despite the presence in the record of a full-scale IQ score of 70.[32]

Similarly, and also by Judge O'Malley, is the case of *Brooks v. Astrue*,[33] decided just the day before *Thomas*. *Brooks* found, *inter alia*, that a diagnosis of something less severe than mental retardation in a situation where the claimant has an IQ score below 71 is "relevant evidence" as to both (a) whether the diagnostic description was met, and (b) whether the IQ score was valid.[34]

## B.  Application of standards

This matter raises three issues for judicial review:

1.  Should the presence in the record of a valid IQ score of 65 in itself have triggered an analysis of whether Velez met Listing 12.05?

2.  Did the ALJ fail to properly apply SSR 83-20 in determining the date of the claimant's mental impairment?

---

[31] *Id.* (citations omitted).

[32] *Id.*, at *12.

[33] *Brooks v. Astrue*, No. 08 CV 2608, 2010 WL 1254323 (N.D. Ohio Mar. 24, 2010).

[34] *Id.*, at *6 (citations omitted).

-9-

3.      Is the finding of no disability at Step 5 supported by substantial evidence where the hypothetical to the VE allegedly did not accurately reflect the limitations set forth by the examining physician?

*1.      IQ score*

As to the first issue, Velez substantially relies on my 2012 decision in *Roberson v. Commissioner of Social Security*[35] for the proposition that any time an ALJ is presented by an on-the-record IQ score below 70, the ALJ must take notice of that score and then articulate reasons why such a score does or does not give rise to a finding of disability under Listing 12.05.[36] But, two years after *Roberson*, and in recognition of an intervening shift by the Sixth Circuit in its understanding the seminal case of *Abbot v. Sullivan*,[37] I stated in *Hobbs v. Commissioner of Social Security:*[38]

> I initially note that the very recent Sixth Circuit decision in *Smith-Johnson v. Commissioner of Social Security* confirms Magistrate Judge White's observation in his recent decision in *Clifton v. Colvin*, that the law of the Sixth Circuit has shifted in its understanding of the seminal case of *Abbott v. Sullivan*. As previously understood, courts construed *Abbott* as holding that, based solely on evidence that the claimant has an IQ score below 70, it was error for an ALJ to fail to consider whether Listing 12.05 was met. From that understanding, many courts in the Circuit and this District, including my own, have concluded that an ALJ's failure to analyze why a claimant with an IQ score

---

[35] *Roberson v. Comm'r of Soc. Sec.*, No. 1:10 CV 2884, 2012 WL 1095953 (N.D. Ohio March 30, 2012).

[36] ECF # 14 at 3-4 (quoting *Roberson*, 2012 WL 1095953, at * 5).

[37] *Abbott v. Sullivan*, 905 F.2d 918 (6ᵗʰ Cir. 1990).

[38] *Hobbs v. Comm'r of Soc. Sec.*, No. 1:13 CV 1411,2014 WL 4545921 (N.D. Ohio Sept. 12, 2014).

-10-

under 70 does not meet or equal Listing 12.05 is grounds for a remand. Moreover, this view of *Abbott* meant that consideration of Listing 12.05 was required at the administrative level even if the claimant has not argued a meeting of Listing 12.05 to the ALJ.

But as Magistrate Judge White explained in *Clifton*, this Circuit has "backed away from the position that *Abbott* created a bright-line rule requiring an ALJ to consider Listing 12.05 whenever there is an IQ score under 70." Two decisions of the Sixth Circuit subsequent to *Abbott* but prior to *Smith-Johnson – Foster v. Halter*, and the more recent unreported case of *Sheeks v. Commissioner of Social Security* – clarify the holding in *Abbott* to now be that an ALJ is required to consider Listing 12.05 only where the record raises "'a substantial question as to whether [the claimant] could qualify as disabled'" under that listing.

Smith-Johnson states that a claimant must do more than merely point to evidence from which the ALJ could then find that a substantial question has been raised, but rather the claimant "must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing. Specifically as concerns a qualifying low IQ score, *Smith-Johnson* notes that the diagnostic definition of Listing 12.05C is not satisfied by a single IQ score, which is only part of the overall assessment for mental retardation.[39]

Therefore, Velez does not correctly state the current law governing this situation when he argues that "[t]he regulations require only one valid IQ score to trigger the legal analysis" of whether a claimant meets Listing 12.05.[40]

As to whether, under the proper applicable test, Velez has pointed to specific evidence that demonstrates he reasonably could meet or equal every requirement of Listing 12.05, I

---

[39] *Id*. at ** 4-5. (Internal citations omitted).

[40] ECF # 14 at 4 (citing *Roberson*, 2012 WL 1095953, at * 5).

note that the listing is understood as having three essential components: (1) a valid IQ score of 60-70; (2) another impairment causing significant work-related limitations of function; and (3) significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifesting before age 22.[41]

The record here clearly shows that Velez satisfied the first component with his IQ score of 65. But, the ALJ's finding at Step Four that Velez could perform his past relevant work even with the limitations of the RFC[42] is inconsistent with a finding of "significant work-related limitations of function" required under the second component of the listing.[43] In fact, in this regard the ALJ observed that while the clinical evidence showed "some difficulty" with various aspects of work-related function, "the evidence fails to demonstrate the debilitating frequency and intensity" of Velez's mental health symptoms.[44] Moreover, the ALJ noted that Velez himself "admitted that his mental health symptoms were not limiting during his most recent work activity" in 2008.[45]

Finally, as to last component of the test - significant sub-average intellectual functioning with current deficits in adaptive functioning, initially manifesting before age 22 - there is no doubt that the low IQ score demonstrates the sub-average intellectual functioning.

---

[41] *Hobbs*, 2014 WL 4545921, at * 5 (citation omitted).

[42] Tr. at 19.

[43] *See*, *Hobbs*, 2014 WL 4545921, at *5.

[44] Tr. at 17.

[45] *Id.* at 17-18 (citing record).

But the ALJ found, after a lengthy review of the record, that Velez was "not experiencing disabling functional limitations" during the relevant period, and noted that a treating psychiatrist in 2012 gave Velez a GAF score of 55 to 60, which is consistent with only moderate functional limitations.[46]  Thus, even if Velez's school record of special education classes and repeating a grade can be seen as evidence that his condition manifested itself before age 22,[47]  Velez has not raised a substantial question as to whether he can meet the third component of Listing 12.05.

Accordingly, for the reasons stated, I find that because Velez did not raise a substantial question as to his ability to meet all the requirements for Listing 12.05, the ALJ did not err in not specifically addressing this question in the opinion.

### 2.   SSR 83-20

As the Commissioner observes, SSR 83-20 - which governs what an ALJ must consider to determine the onset date - "applies only when there has been a finding of disability and it is necessary to determine when the disability began."[48]  Stated differently, this ruling only applies when the question is whether the claimant "was disabled prior to the

---

[46] *Id*. at 18 (citing record).

[47] *See*, ECF # 14 at 3-4 (citing record).

[48] *Clendering v. Comm'r of Social Security*, 482 Fed. App'x 93, 95 (6th Cir. 2012)(citing *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

expiration of his insured status"[49] since "a period of disability can commence only while an applicant is fully insured."[50]

Here, because Velez was found not to be disabled, there was no need to determine an onset date of any disability. Thus, there was no error by the ALJ related to any failure to apply SSR 83-20 in this matter.

### 3.    *Step 5*

Velez argues here that the hypothetical to the VE was flawed in that it failed to incorporate functional limitations set out in the opinions of Richard Halas, M.A., a consultative examining psychologist, and Dr. Dorothy Bradford, M.D., a consultative examining physician.[51]

As to Mr. Halas, the ALJ gave considerable weight to his opinion, but discounted the more "serious" mental functional limitations.[52]  In this regard, the ALJ noted that the opinion's low GAF score - the ground for the more serious functional limitations - reflected evidence from after the date last insured, and further observed that the GAF score in this instance was "significantly lower" than that assigned by a treating source in 2012.[53]

---

[49] *Key*, 109 F.3d at 274.

[50] *Jones v. Comm'r of Soc. Sec.*, 121 F.3d 708 at *1 (6th Cir. 1997)(table case)(citation omitted).

[51] ECF # 14 at 6.

[52] Tr. at 18.

[53] *Id*. at 18-19.

Further, as the Commissioner notes, to the extent that Mr. Halas's more serious mental limitations were not credited, the ALJ chose instead to give "great weight" to the functional opinions of the state agency reviewing psychologists,[54] whose views closely align with the RFC.[55]  In so doing, the ALJ committed no reversible error.[56]

Similarly, the ALJ committed no error discounting the functional opinion of Dr. Bradford.  As the ALJ stated, Dr. Bradford opinion as to sedentary activity appeared to unduly rely on Velez's subjective complaints, and her observations about Velez's right thumb were assessed - together with the views of the state agency reviewing physicians - in formulating the RFC in this regard.[57]

Dr. Bradford is a one-time examining source, and not a treating source. Thus, no presumption of weight attaches to her opinion, and no special rubric applies when evaluating that opinion.  Here, the ALJ articulated reasons for the weight assigned that are judicially reviewable, and those reasons are good reasons.

_____

[54] *Id*. at 19.

[55] ECF # 19 at 11-12.

[56] *See*, SSR 96-6p (indicating that ALJs are "required" to consider opinions on the nature and severity of impairments offered by state agency consultants); *see also*, *Washington v. Comm'r of Soc. Sec.*, No. 1:13 CV 624, 2014 WL 2002988, at * 3 (N.D. Ohio May 14, 2014)(citation omitted)("it is not improper [in formulating the RFC] for the ALJ to rely upon the opinion of a non-examining state agency source, who is generally considered to be an expert in Social Security disability evaluations, and who are acknowledged to be useful to the ALJ in making sense of the whole record").

[57] Tr. at 18.

## Conclusion

For the reasons stated, I find that substantial evidence supports the decision of the Commissioner to deny benefits to Milton L. Velez, and that the decision is therefore affirmed.

IT IS SO ORDERED.

Dated: February 17, 2017          s/ William H. Baughman, Jr.
                                           United States Magistrate Judge